## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHERYL ANN LEANDRI,** | : | **Civil No.  3:23-CV-00962** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARTIN O'MALLEY,**[1] | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff in this case, Cheryl Leandri, applied for a period of disability and disability insurance benefits on March 15, 2019, claiming she was disabled due to an array of physical impairments including hearing loss, diabetes, high blood pressure, and high cholesterol. Her initial application reported no mental impairments, and her accompanying function report noted that her impairments did not affect her any areas of mental functioning except that she did not handle stress well or like changes in routine. However, following her application, but before her

---

[1]Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

hearing, in late 2020, Leandri's primary care physician diagnosed her with an adjustment disorder, which she now claims has affected her ability to perform work-related activities.

The ALJ who presided over Leandri's disability hearing considered the evidence, including her adjustment disorder diagnosis and subsequent medical records, and the medical opinion of a State agency psychological consultant who reviewed Leandri's records prior to her diagnosis and concluded she had no mental health impairment. Although the ALJ found this medical opinion overall unpersuasive since it did not consider her adjustment disorder diagnosis, the ALJ nonetheless concluded, based on the totality of the evidence, that Leandri's adjustment disorder was non-severe. The ALJ then found that Leandri had not met the stringent standard required to establish disability and denied this claim.

Leandri now challenges the ALJ's decision, arguing only that the ALJ failed to develop the record since the only medical opinion addressing her mental impairments occurred prior to her diagnosis and the ALJ was required to order a consultative examination to determine how her mental impairment following her diagnosis affected her functional abilities. However, we are constrained by the well-settled proposition that we exercise a limited scope of substantive review when considering Social Security appeals. As the Supreme Court has noted:

2

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g.</u>, <u>Perales</u>, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S. Ct. 206. <u>See</u> <u>Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). This standard is particularly relevant here, where the development of the record and assessment of the medical opinion evidence rests soundly at the discretion of the ALJ. Moreover, the plaintiff has failed to demonstrate that there was a conflict, inconsistency, or ambiguity in the record which required further investigation. In fact, there is evidence demonstrating that, even following her adjustment disorder diagnosis, she was receiving conservative treatment for this impairment and it did not significantly affect her activities of daily living.

Therefore, in this case, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Biestek</u>, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings that the plaintiff was not disabled. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.   <u>Statement of Facts and of the Case</u>

The administrative record of Leandri's disability application reveals the following essential facts: Leandri applied for disability benefits under Title II of the Social Security Act on March 15, 2019, with an alleged onset date of May 12, 2018. (Tr. 100). She was born on August 27, 1964, and was considered "closely approaching advanced age" from her alleged onset date through August 27, 2018, at which point she changed categories to "advanced age." (<u>Id.</u>) She has past relevant work as an accounting clerk and imaging clerk. (Tr. 27). In her application for disability benefits, Leandri alleged she was limited in her ability to work due to hearing loss/deafness, type 1 diabetes, high blood pressure, and high cholesterol. (Tr. 100-01). Notably, her application did not allege disability due to any mental impairment, (<u>Id.</u>), although she did note stress and anxiety as a factor that contributed to her inability to work at the disability hearing. (Tr. 44).

4

Leandri challenges only the ALJ's findings as to her mental impairment of adjustment disorder, so our analysis of the administrative record focuses only on the very meager record of Leandri's mental health treatment records during the relevant period. Prior to the date of her adjustment disorder diagnosis, on May 14, 2019, Leandri completed a function report that noted she does not handle stress well and that it "bothers [her] every day." (Tr. 343). But her function report also states that she lived alone, and could take care of her dog, prepare her own meals, drive a car, go out alone, shop in stores, and manage her own money. (Tr. 337-42). She also indicated that her impairments did not affect her ability to understand, remember, or follow instructions, get along with others, concentrate, complete tasks, or follow instructions. (Tr. 342). A mental status screening during a July 2019 consultative examination revealed that she dressed appropriately, maintained good eye contact, appeared oriented in all spheres with no evidence of hallucination or delusions, impaired judgment, or significant memory impairment, had a normal affect and no suicidal or homicidal ideation. (Tr. 1218).

Nonetheless, the plaintiff argues that there was insufficient medical opinion evidence of the effect of her adjustment disorder on her functional abilities since she was diagnosed with adjustment disorder with depressed mood in November 2020 and prescribed Sertraline (Zoloft). (Tr. 3456). However, at the hearing, Leandri

5

testified that she had struggled with anxiety for years, as she had difficulty handling stress at her previous jobs, and that she had been on Zoloft for over ten years. (Tr. 57). Moreover, treatment notes in August 2020 note she was on Wellbutrin for adjustment disorder with depressed mood and tobacco use disorder. (Tr. 3028, 3204, 3292). Thus, the record of the plaintiff's testimony and treatment belies her assertion that she suddenly and acutely began experiencing anxiety and depression in November 2020, the alleged date of her diagnosis.

But, despite the fact that Leandri's adjustment disorder, manifesting as anxiety and depression, was seemingly something she had experienced over years, during the relevant disability period, and even following her diagnosis, the scant evidence regarding her mental health indicated that this condition was not severe. For example, she reported not feeling down, depressed, or hopeless most of the day in May and October 2020 and January and March 2021. (Tr. 2816, 3297, 3562, 3853). Beyond normal examinations at her primary care physician, which overwhelmingly reported that she was pleasant, alert, and oriented with normal mood, judgment, behavior, thought content, and appearance, (Tr. 3407, 3907, 4673, 4025, 4140, 4365, 4415), Leandri required no specialized mental health treatment whatsoever beyond the prescription management of her primary care doctor. In fact, in April 2021, her primary care doctor noted that she was not taking Sertraline

consistently and felt she did not want to take anything for depression. (Tr. 3903). She did occasionally report being nervous and anxious, specifically regarding her health problems, (Tr. 3903, 4140), but also reported being in no acute distress. (Tr. 3907, 4140, 4415).

Based upon this sparce clinical history, only one medical source, State agency psychological consultant Melissa Franks Psy.D., opined that the available medical evidence of record did not establish the presence of a mental health impairment. (Tr. 108). Importantly, Dr. Franks submitted this opinion in September 2019, prior to the date the plaintiff alleges she was diagnosed with adjustment disorder. Dr. Franks based her opinion upon the evidence indicating that the plaintiff did not allege any disabling mental health conditions, did not have her activities of daily living significantly impacted by mental health factors, had no formal mental health treatment, and had normal mental status examination at the internal medicine consultative examination. (Tr. 108).

A telephonic disability hearing was conducted on June 2, 2022, at which Leandri and a vocational expert testified. (Tr. 37-82). At the hearing, Leandri testified about her symptoms. When asked why she felt she could not perform any work since May of 2018, she testified to, in addition to her physical impairments, "anxiety and stress, I get very, very stressed out." (Tr. 44). She also stated that she

had anxiety, and her last job was too stressful for her, (Tr. 56), but noted that she had been taking Zoloft for ten or eleven years and that she felt a little better since being on it, and that she was being treated by her primary care physician and had not discussed seeing a therapist or psychiatrist. (Tr. 57). She also stated that when she is under a lot of pressure her sugar goes "through the roof." (Tr. 64).

Following the hearing, the ALJ issued a decision denying Leandri's application for benefits. (Tr. 9-36). In that decision, the ALJ first concluded that Leandri last met the insured requirements of the Act on September 30, 2021, and had not engaged in substantial gainful activity during the period from her alleged onset date of May 12, 2018, through her date last insured. (Tr. 15). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Leandri had the following severe impairments: COPD, diabetes mellitus, hearing loss (congenital sensorineural), trigger finger, status-post carpal and cubital tunnel on the right, left carpal tunnel syndrome, and proliferative diabetic retinopathy with macular edema. (Id.) The ALJ also noted objective evidence of a host of other acute or non-severe physical impairments. (Tr. 15-16). The ALJ then explained that Leandri's medically determinable mental impairment of adjustment disorder did not cause more than minimal limitation in her ability to perform basic work-related activities through the date last insured and was therefore "nonsevere." (Tr. 16).

8

In making this finding, the ALJ considered the broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). (Id.) The ALJ explained:

> The first functional area is understanding, remembering, or applying information. In this area, the claimant had no limitation. The claimant actually reported that her impairments do not affect her ability to understand, remember, or follow instructions (Exhibit B3E/7). In fact, she indicated that she remains able to live alone, take care of her dog, prepare her own meals, drive a car, go out alone, shop in stores, and manage money (Exhibit B3E). As such, the undersigned determines that the claimant had no limitation in understanding, remembering, or applying information.
>
> The next functional area is interacting with others. In this area, the claimant had no limitation. The claimant actually reported that her impairments do not affect her ability to get along with others, including authority figures (Exhibit B3E/7-8). In fact, she indicated that she remains able to go out alone and shop in stores (Exhibit B3E). As such, the undersigned determines that the claimant had no limitation in interacting with others.
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant had no limitation. The claimant actually reported that her impairments do not affect her ability to concentrate, complete tasks, or follow instructions (Exhibit B3E/7). In fact, she indicated that she remains able to live alone, take care of her dog, handle her personal care with no problem, prepare her own meals, clean, drive a car, go out alone, shop in stores, and manage money (Exhibit B3E). As such, the undersigned determines that the claimant had no limitation in concentrating, persisting, or maintaining pace.

The fourth functional area is adapting or managing oneself. In this area, the claimant had no limitation. While the claimant reported that her impairments affect her ability to handle stress and changes in routine, she further indicated that she remains able to live alone, take care of her dog, handle her personal care with no problem, prepare her own meals, go out alone, shop in stores, and manage money (Exhibit B3E). As such, the undersigned determines that the claimant had no limitation in adapting or managing oneself.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was nonsevere (20 CFR 404.1520a(d)(1)).

(Tr. 17). The ALJ also specifically noted that these four functional areas known as "paragraph B" criteria are not a residual functional capacity assessment, which requires a more detailed assessment, but that the RFC assessment at steps 4 and 5 reflected the degree of limitation the ALJ found in the "paragraph B" mental function analysis. (Tr. 17-18).

At Step 3, the ALJ determined that Leandri did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments, considering the listings that most closely related to the physical impairments categorized as "severe." (Tr. 18).

Between Steps 3 and 4, the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff which considered Leandri's impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations. The claimant is limited to occasional balance, stoop, crouch, crawl, kneel, and climb, but never on ladders, ropes, or scaffolds. The claimant is limited to frequent fine and gross manipulation (for fingering and grasping/handling). The claimant is limited to frequent exposure to temperature extremes of cold and heat, wetness, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation, and no exposure to hazards including moving machinery and unprotected heights. The claimant can work in moderate level noise, no loud level noise such as manufacturing department or moving equipment or heavy traffic noise.

(Tr. 20).

Specifically, in making the RFC determination, the ALJ considered the medical evidence and Leandri's testimony regarding her impairments. The ALJ first engaged in a two-step process to evaluate Leandri's alleged symptoms and found that, although the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Leandri's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 21-22).

11

In making this determination, the ALJ considered statements and medical records relating to Leandri's impairments. Given the paucity of medical evidence supporting Leandri's mental impairments, beyond her diagnosis, in fashioning the RFC, the ALJ primarily focused on her activities of daily living and the medical opinion of State agency psychological consultant Melissa Franks, Psy.D. As to her activities of daily living, the ALJ explained:

> In addition to the above medical evidence of record, the undersigned considered the claimant's activities of daily living. The claimant reported that she remains able to live alone, take care of her dog, handle her personal care with no problem, prepare her own meals, clean once per week, drive a car, go out alone, shop in stores, read the newspaper, watch TV with her glasses, peel vegetables, and pick up the laundry basket (Exhibit B3E; Hearing Testimony). While the undersigned acknowledges that the claimant has some limitations performing these activities, and while none of these activities is dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis.

(Tr. 24-25). With respect to the opinion of Dr. Franks, the ALJ noted:

> The undersigned considered the September 2019 opinion of the State agency psychological consultant at the initial level, Melissa Franks, Psy.D., who indicated that the available medical evidence of record does not establish the presence of a mental health impairment (Exhibit B2A/9). The undersigned finds this opinion albeit persuasive at the time made, overall is unpersuasive, as it is not supported by or consistent with the additional medical evidence of record. Although non-severe, the record shows that the claimant has been diagnosed with an adjustment disorder through her primary care provider in November 2020.

(Tr. 27).

Thus, read as a whole, in fashioning the RFC, the ALJ considered the medical opinion evidence prior to her diagnosis that she had no mental health impairment and Leandri's activities of daily living including her ability to live alone and perform many daily tasks with some physical limitations. The ALJ then concluded that, combined with the "paragraph B" analysis conducted previously in the decision in which the ALJ found her medically determinable impairments caused no limitation in any of the four functional areas and no indication that there was more than a minimal limitation in her ability to do basic work activities, no functional limitations with regard to Leandri's mental impairments were necessary.

Having arrived at this RFC assessment, the ALJ found that Leandri could perform her past relevant work as an accounting clerk, as this work did not require the performance of work-related activities precluded by his RFC. (Tr. 27). Based upon these findings, the ALJ determined that Leandri did not meet the stringent standard for disability set by the Act and denied her claim. (Tr. 29).

This appeal followed. (Doc. 1). On appeal, Leandri argues that the RFC is not supported by substantial evidence since there is no medical opinion regarding Leandri's mental functional limitations and the ALJ erred in failing to order a

consultative examination. However, for the reasons set forth below, we find the decision of the ALJ was supported by substantial evidence and will affirm the decision of the Commissioner.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

15

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial

review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20

C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R.

18

§§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the

19

proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment

of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence

The plaintiff filed this disability application in March of 2019 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

22

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

23

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." <u>Id</u>. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. <u>Id</u>. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). <u>Id</u>. at §§ 404.1520c(b)(3), 416.920c(b)(3).

<u>Andrew G. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel,</u> 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Mason,</u> 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, and importantly in this case, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

### D.   Legal Benchmarks Governing ALJ's Decisions Concerning Whether to Order a Consultative Examination

In this case, Leandri argues, in part, that the ALJ erred by failing to order a mental health consultative examination. As a general matter, "[t]he decision to order a consultative examination is within the sound discretion of the ALJ." Basil v. Colvin, No. CIV.A. 12-315E, 2014 WL 896629, at *2 (W.D. Pa. Mar. 6, 2014) (citing Thompson v. Halter, 45 Fed.Appx. 146, 149 (3d Cir. 2002); 20 C.F.R. §§

404.1517, 416.917). Further, the exercise of this discretion is linked to an informed

assessment of the evidence in each case. Thus:

> An "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Id. Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency or ambiguity in the record. See, 20 C.F.R. §§ 404.1519(a), 416.919(a).

Basil v. Colvin, No. CIV.A. 12-315E, 2014 WL 896629, at *2 (W.D. Pa. Mar. 6,

2014). See Rissmiller v. Colvin, No. CV 15-5731, 2016 WL 6107209, at *5 (E.D.

Pa. Oct. 18, 2016). Therefore, a determination of whether a consultative examination

is needed in a particular case is a discretionary judgment by an ALJ and is a judgment

that should be firmly rooted in an assessment of the evidence as a whole. Ultimately,

"the ALJ's duty to develop the record does not require a consultative examination

unless the claimant establishes that such an examination is necessary to enable the

ALJ to make the disability decision." Thompson v. Halter, 45 Fed.Appx. 146, 149

(3d Cir. 2002).

## E.   The ALJ's Decision in this Case is Supported by Substantial Evidence.

Judged against these deferential standards of review, we find that substantial

evidence supported the decision by the ALJ that Leandri's adjustment disorder was

26

non-severe and that she could perform her past sedentary, skilled work. For her part Leandri has launched a twofold attack upon this ALJ decision, arguing first that the ALJ erred in prescribing a residual functional capacity assessment for the plaintiff without any medical opinion regarding her mental RFC following her adjustment disorder diagnosis. In our view this argument fails for at least three reasons.

At the outset, the ALJ was not required to rely upon a medical opinion in fashioning the RFC, since it is well-settled that, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 Fed.Appx. 6, 11 (3d Cir. 2006). Indeed, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). Thus, when, as in this case, an ALJ fashions a residual functional capacity determination on a sparse factual record, reviewing courts should adopt a pragmatic view and sustain the ALJ's exercise of independent judgment if that decision is properly based upon all of the facts and evidence. See Titterington v. Barnhart, 174 Fed.Appx. 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In this setting, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's residual functional capacity is deferential, and that RFC assessment will not be set aside if it

is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002).

Second, Leandri's argument discounts the deferential standard of review which applies in this case. On this score, we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Instead, we must simply ascertain whether the RFC assessment is support by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Judged by this deferential standard of review an RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002).

Third, and finally, recognizing that there was no legal barrier to the ALJ fashioning a residual functional capacity assessment in a case such as this where Leandri has provided no evidence to support her claim that her adjustment disorder caused any more than a mild limitation in any area of functioning, we further find that substantial evidence supported the ALJ's determination in this case that Leandri's mental impairments were non-severe. Indeed, beyond the plaintiff's

28

reference to her function report noting she "does not handle stress well," her testimony that she feels anxious and nervous causing stress at work, and the fact of her adjustment disorder diagnosis in November 2020, the plaintiff points us to no evidence that her mental impairment was causing her any difficulty in any area of functioning. In fact, Leandri was not seeing any mental health provider and was diagnosed by her primary care physician, who frequently reported normal mental status examination findings, even following her diagnosis. (Tr. 3409, 3907, 4025, 4140, 4365, 4415, 4673). And her function report stated that her impairments did not affect her ability to understand, remember, or follow instructions, get along with others, concentrate, complete tasks, or follow instructions. (Tr. 342). Importantly, the only medical opinion of record regarding her mental impairments, albeit before the date of her diagnosis, noted that she did not have a medically determinable mental health impairment, since she did not allege any disabling mental health conditions, did not have her activities of daily living significantly impacted by mental health factors, had no formal mental health treatment, and had normal mental status examinations at her internal medicine consultative examination. (Tr. 108).

The plaintiff argues that this evidence relied upon by the ALJ in finding her adjustment disorder non-severe cannot support the findings regarding her mental RFC because the only medical opinion regarding her mental impairments occurred

before her November 2020 adjustment disorder diagnosis and did not explain how her adjustment disorder specifically impacted her residual function capacity. But the ALJ considered Leandri's diagnosis in finding the opinion of Dr. Franks overall unpersuasive and, nonetheless, based his finding that Leandri's adjustment disorder was non-severe on the other evidence of record, including her own reports that her impairments do not affect her abilities in any of the broad functional areas of mental functioning.

On this score, although the plaintiff argues her May 2019 function report was irrelevant to her mental RFC since she was diagnosed with adjustment disorder in November 2020, other than her diagnosis, she provides no evidence that her condition had significantly changed since her function report. In fact, as previously noted, medical records from around the time of her diagnosis and after indicate that she was not seeking specialized mental health treatment, had been on Zolof for over ten years which was working well, and was being treated by her primary care physician who regularly reported normal mental status examination results. And, at base, Leandri's claim that the ALJ was obligated to develop the record further as to her mental impairments is hollow where, as here, the evidence in the record, while sparce, tends to support the finding of the ALJ and the plaintiff has provided no

explanation, beyond the fact of her diagnosis, why more information was needed to develop her mental RFC.

Finally:

it is also well settled that:

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D. Pa. Sept. 17, 2009).

> McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); see also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless."). Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014).

Capalaces v. Kijakazi, No. 3:23-CV-00034, 2024 WL 84205, at *12 (M.D. Pa. Jan. 8, 2024). In this case, the ALJ has stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity," (Tr. 16), and the ALJ's narrative analysis specifically addressed Leandri's activities of daily living and

31

medical records, which did not describe significant mental impairments. (Tr. 25-25, 27). Therefore, on these facts any arguable Step 2 error was harmless.

Leandri's argument that the ALJ erred in failing to order a consultative examination similarly fails and warrants only brief consideration. Such decisions rest in the sound discretion of the ALJ but "the ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Thompson v. Halter, 45 Fed.Appx. 146, 149 (3d Cir. 2002). In this case we find that there has been no abuse of discretion by the ALJ because Leandri did not show that a consultative examination was necessary under Social Security regulations in order to reach a disability decision. Thus, the mere fact that the plaintiff's diagnosis occurred after the medical opinion and consultative examination has no bearing where the ALJ considered the diagnosis and other relevant evidence of record and the meager medical showing made by Leandri simply did not illustrate that an examination was needed "to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [this] claim." 20 C.F.R. § 404.1519a(b). Quite the contrary, when the evidence is considered as a whole, rather than revealing conflicts in the proof, the existing

evidence seemed to consistently show that the plaintiff's mental impairments were non-severe.[2]

Accordingly, under the deferential standard of review which applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's evaluation of this evidence. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant and instruct the clerk to close this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

<u>s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

DATED: August 6, 2024

---

[2] Moreover, although conducted prior to the alleged date of her adjustment disorder diagnosis, Leandri did undergo a consultative examination which showed normal mental status examination findings.